UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
SHANEL MONET RIVERO-ROSADO,                  :
                                              :
                           Plaintiff,        :
                                              :
              -against-                       :      22-CV-4319 (OTW)
                                              :
COMMISSIONER OF SOCIAL SECURITY,              :      **OPINION & ORDER**
                                              :
                           Defendant.         :
                                              :
------------------------------------------------------------x

**ONA T. WANG, United States Magistrate Judge:**

I.  **INTRODUCTION**

On December 10, 2019, Plaintiff Shanel Monet Rivero-Rosado filed a Title II application for disability and disability insurance benefits ("DDI") and a Title XVI application for supplemental security income benefits ("SSI"). (ECF 10 at 13). In both applications, Plaintiff stated that her disability began on November 5, 2017. (ECF 10 at 13). The claims were denied on March 13, 2020, and upon reconsideration on July 22, 2020. (ECF 10 at 13). Plaintiff then filed a written request for a hearing which was received on September 18, 2020. A telephone hearing was held remotely due to the COVID-19 pandemic on December 16, 2020. (ECF 10 at 13). Plaintiff testified before ALJ John Carlton, and was represented by her attorney, Christopher D. Latham. (ECF 10-13). An impartial vocational expert ("VE"), Esperanza Distefano, also appeared at the hearing.

On May 4, 2021, ALJ Carlton issued a decision finding that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act and therefore not entitled to DDI benefits; and that Plaintiff was not disabled under section 1614(a)(3)(A) of the Social Security

1

Act and therefore not entitled to SSI benefits. (ECF 10 at 23). Plaintiff appealed the decision, and the Appeals Council denied review on March 22, 2022. (ECF 10 at 1). On March 25, 2022, pursuant to 42 U.S.C. § 405(g), Plaintiff filed the Complaint commencing this action *pro se* challenging the final decision. (ECF 2). On November 28, 2022, Amy Y. Chen, Esq. filed a notice of appearance of pro bono counsel on behalf of Plaintiff. (ECF 21). The parties consented to my jurisdiction on May 9, 2023. (ECF 37).

For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is **GRANTED**, the Commissioner's Cross Motion for Judgment on the Pleadings is **DENIED**, and the case is remanded for further proceedings pursuant to 42 U.S.C. § 405(g).

## II.   BACKGROUND[1]

### A.   Plaintiff's Medical History

Plaintiff was born on January 17, 1973. (ECF 10 at 22). Her highest level of education is attainment of a high school diploma. (ECF 10 at 22). At the onset of her alleged disability, November 5, 2017, Plaintiff was 44 years old, defined as a "younger individual" under SSA regulations. 20 CFR § 404.1563 and § 416.963. (ECF 10 at 22). Prior to her disability, Plaintiff had been working as a customer service representative at Verizon, where she answered back-to-back calls, typed customer information and orders, and typed and sent emails. (ECF 10 at 35-36). The frequent typing and prolonged sitting required by her job were considered by her doctor to have been a significant cause of her injuries. (ECF 10 at 282). Plaintiff testified that she cannot work because of back and neck pain, back spasms, and severe headaches that are exacerbated by prolonged periods of sitting. (ECF 10 at 38).

---

[1] The facts are taken from the Certified Administrative Record filed on August 24, 2022. (ECF 10).

1. *Treatment from Dr. Sanjiv Bansal*

Dr. Bansal, an orthopedic surgeon, had been treating Plaintiff since 2013. (ECF 10 at 358). Dr. Bansal began treatment of Plaintiff's hurt elbow, a key issue in the Plaintiff's claim, in October, 2017. (ECF 10 at 280). In a follow-up appointment on December 8, 2017, Dr. Bansal reported swelling in Plaintiff's left elbow. (ECF 10 at 282). He diagnosed Plaintiff with "severe lateral epicondylitis secondary to the type of job that she does." (ECF 10 at 282). Dr. Bansal did not see Plaintiff again for this issue until January 3, 2019, as Plaintiff was undergoing physical therapy and rehabilitation. (ECF 10 at 287). Dr. Bansal reported Plaintiff had lost some mobility in her left arm and elbow and that she had "a Schedule loss of use of 32.5% based on the mild defect in extension, 25%, and a mild defect in flexion, 7.5%." (ECF 10 at 287).

On October 28, 2020, Dr. Bansal conducted a physical capacity evaluation to assess Plaintiff's condition after physical therapy. (ECF 10 at 367). Dr. Bansal reported that Plaintiff's "cervical spine affects her upper extremities that is causing her pain and discomfort that is going down all the way to the hand area." (ECF 10 at 367). When Plaintiff returned to Dr. Bansal on November 25, 2020, Dr. Bansal ordered an MRI and an EMG. (ECF 10 at 369).

2. *Physical Therapy*

The record only contains documentation of Plaintiff's physical therapy from October 6, 2020, through October 26, 2020. (ECF 10 at 339-357). By October 26, Plaintiff reported slight improvement in pain and milder back spasms. (ECF 10 at 339). Plaintiff's physical therapist reported that Plaintiff "presents with pain, [loss of movement], [and] weakness in affected musculature which are interfering with pain-free function and overall quality of life." (ECF 10 at 351).

*3. Diagnostic Testing Results*

On March 5, 2020, Dr. Robert Obedian, a certified radiologist, interpreted Plaintiff's lumbosacral spinal x-ray. (ECF 10 at 335). He found that Plaintiff had "moderate intervertebral disc space narrowing and small endplate osteophyte formation" and "moderate degenerative change" at her L5-S1 vertebrae. (ECF 10 at 335).

Plaintiff saw Dr. Ravi Sutaria, a rheumatologist, on December 4, 2020. In Plaintiff's physical examination, he noted a normal range of motion of the lumbar spine, neck, and hips; no tenderness to palpation of the back; swelling and tenderness at the finger and wrist joints; normal extension of the elbows; tender ankles; and no swelling or tenderness of her knees. (ECF 10 at 362). Dr. Sutaria ordered labs, which indicated seronegative rheumatoid arthritis. (ECF 10 at 363).

Plaintiff saw Dr. Indu Garg for an MRI and EMG in early January 2021. (ECF 10 at 370-71). The MRI indicated a "mild diffuse disc bulge with a small broad based superimposed left central protrusion . . . causing moderate compression of the left S1 nerve roots within the left lateral recess, mild bilateral facet hypertrophy, and moderate left and right foraminal narrowing, which had worsened since the previous imaging. (ECF 10 at 370). The EMG showed "evidence of mild S1 radiculopathy on the left." (ECF 10 at 372). Dr. Garg reported negative Spurling and Hoffman tests. (ECF 377). Dr. Garg conducted another EMG in February 2021 which revealed signs of electrical instability, moderate C6 radiculopathy on the left, and mild C6 radiculopathy on the right. (ECF 10 at 379). Dr. Garg also ordered another MRI in February 2021 which showed mild diffuse disc bulges with small broad based superimposed right neural

foraminal disc protrusion causing mild to moderate right foramina narrowing at vertebrae C3-C4 and C4-C5, which had worsened slightly from the previous examination. (ECF 10 at 382).

4. *Consultative Examinations*

Plaintiff saw Dr. Gregory Galano for an examination related to her workers compensation claim on February 28, 2019. (ECF 10 at 289). Dr. Galano noted that from what Plaintiff described of her past medical history, it was "significant for arthritis." (ECF 10 at 289). He also reiterated that typing and holding items for extended time makes the pain worse. (ECF 10 at 290). Dr. Galano diagnosed Plaintiff with "left elbow strain/lateral epicondylitis" which caused a 10% scheduled loss of use. (ECF 10 at 291).

On March 4, 2020, Plaintiff saw Dr. Eric Rosenbaum for a consultation for her Social Security Benefits application. (ECF 10 at 331). Plaintiff reported neck pain that has been ongoing for at least 11 years, which was slightly alleviated with a breast reduction in 2010, and which ranges from a pain level of 0/10 to a pain level of 10/10. (ECF 10 at 331). Dr. Rosenbaum diagnosed Plaintiff with Cervicalgia and lower back pain and noted limitations in prolonged sitting for longer than one hour. (ECF 10 at 334).

**B. Plaintiff's Nonmedical Records**

1. *Plaintiff's Adult Function Report*

In Plaintiff's Adult Function Report, she answered that since the onset of her injuries, she was no longer able to "stand or sit for long periods of time, walk long distances, climb stairs pain-free, do laundry alone, cook every night, or clean thoroughly." (ECF 10 at 238). Additionally, Plaintiff was unable to sleep well due to pain, numbness, and/or headache. (ECF 10 at 238). Plaintiff could not wash her own hair, so she had to go to the hairdresser. (ECF 10 at

238). She used to knit, however she was no longer able to do so because of lack of hand strength. (ECF 10 at 241). She could only walk about three-to-four blocks, could only sit for about 30-40 minutes, and could not stand for long periods of time. (ECF 10 at 242). Plaintiff further explained that she could only shop and do laundry when someone could help her. (ECF 10 at 237). She reported that she went to church weekly. (ECF 10 at 241).

   *2. Plaintiff's Testimony at the Administrative Hearing*

At the hearing before ALJ John Carlton, Plaintiff testified that she had been unable to work due to her back issues, which prevented her from sitting for long periods of time. (ECF 10 at 38). These back pains caused severe headaches, back spasms, shooting pain into her hands and legs, and cramping in her fingers, which made it difficult to type or hold objects. (ECF 10 at 39-40).

In terms of physical capabilities, Plaintiff testified that she could only walk on level ground for between ten and thirty minutes before needing to rest, and that she could not make it up her third-floor walkup without taking a break. (ECF 10 at 40). Plaintiff reported that when she had days in which she was required to leave the house for more than half the day or if she had to go to multiple locations, her back would seize up and she would be "out of commission" the next day. (ECF 10 at 42).

Plaintiff testified that she lives with her daughter, son, grandson, and sister. (ECF 10 at 51). She tries to help with watching her grandson, cleaning, and cooking, but she is extremely limited. (ECF 10 at 52). In terms of cooking, she only makes easy meals like breakfast which do not require her to be in the kitchen for long. (ECF 10 at 52). With regards to cleaning, she can only manage to "occasionally put the mop across the floor." (ECF 10 at 54).

6

*3. Testimony from Vocational Expert, Esperanza Distefano*

VE Distefano testified that a hypothetical individual with ALJ Carlton's proposed limitations of inability to work on ladders, ropes, or scaffolds; inability to work at unprotected heights or around dangerous machinery; occasional ability to balance, stoop, crouch, crawl, or kneel; and inability to more than occasionally finger or feel bilaterally, would not be able to perform Plaintiff's past work, as Plaintiff described it, due to the frequent fingering. (ECF 10 at 62-63). However, VE Distefano testified that there were many jobs that said hypothetical individual would be able to perform, such as telephone solicitor, information clerk, customer complaint clerk, call out operator, furniture rental consultant, or usher. (ECF 10 at 63-65). VE Distefano testified that most employers would allow no more than 10% off-task behavior, and no more than one absence per month. (ECF 10 at 59).

**C. The ALJ's Decision**

The ALJ concluded that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act and therefore not entitled to DDI benefits, and that Plaintiff was not disabled under section 1614(a)(3)(A) of the Social Security Act and therefore not entitled to SSI benefits. (ECF 10 at 27). Specifically, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2024, and found that Plaintiff had not engaged in substantial gainful activity since November 5, 2017, the alleged onset date. (ECF 10 at 20). The ALJ also found that Plaintiff suffers from the severe impairments of degenerative disc disease in the lumbar and cervical spine with radiculopathy, a left elbow strain/epicondylitis, and obesity, but that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P,

Appendix 1. 20 C.F.R. §§ 404.1520 and 404.1525-26. (ECF 10 at 16-17). ALJ Carlton concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). (ECF 10 at 22). Ultimately, the ALJ found Plaintiff to be capable of performing past relevant work as a customer service representative, and that this work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. §§ 404.1565 and 416.965). (ECF 10 at 25).

## III. ANALYSIS

### A. Applicable Law

*1. Standard of Review*

A motion for judgment on the pleadings should be granted if the pleadings make it clear that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 12(c). However, a court's review of the commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the commissioner and whether the correct legal standards were applied. 42 U.S.C.A. § 405(g). Substantial evidence is more than a mere scintilla but requires the existence of "relevant evidence as a reasonable mind might accept as adequate to support the conclusion," even if there exists contrary evidence. *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (same). This is a "very deferential standard of review." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). The Court may not determine *de novo* whether Plaintiff is disabled but must accept the ALJ's findings unless "a reasonable factfinder would have to conclude otherwise." *Id*.

*2. Determination of Disability*

To be awarded disability benefits, the SSA requires that one have the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 416.905(a). An ALJ makes this determination through a five-step evaluation process, where the burden rests on the plaintiff for the first four steps. Only after all four steps are satisfied does the burden then shift to the commissioner for the fifth and final step. 20 C.F.R. § 416.920.

First, an ALJ must determine that the plaintiff is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4). Second, an ALJ must find that the plaintiff's impairment is so severe that it limits her ability to perform basic work activities. *Id*. Third, an ALJ must evaluate whether the plaintiff's impairment falls under one of the Listings in Appendix 1 of Subpart P ("Listings"), such that she may be presumed to be disabled. Absent that, an ALJ must then determine the claimant's Residual Functional Capacity ("RFC"), or her ability to perform physical and mental work activities on a sustained basis. *Id*. Fourth, an ALJ then evaluates if the plaintiff's RFC precludes her from meeting the physical and mental demands of her prior employment. *Id*. If the plaintiff has satisfied all four of these steps, the burden then shifts to the commissioner to prove that based on the plaintiff's RFC, age, education, and past work experience, the plaintiff is capable of performing some other work that exists in the national economy. *Id.*

**B. Analysis of ALJ Carlton's Decision**

Plaintiff rests her appeal upon four issues with ALJ Carlton's decision. Plaintiff claims that ALJ Carlton: (1) applied the wrong listings at step three; (2) misunderstood and mischaracterized evidence in his determination of Plaintiff's RFC; (3) made an RFC determination that was unsupported by the record; and (4) erred in his instructions to the VE. (ECF 28 at 11-27).

The Court finds that ALJ Carlton: (1) applied the incorrect listing at step three, (2) made an RFC determination that was unsupported by the record, and (3) made a step five determination that was not supported by substantial evidence.

*1. ALJ Carlton Applied the Incorrect Listing at Step Three*

At step three, the ALJ evaluates whether the plaintiff's impairment falls under one of the Listings. Reversal of an ALJ's findings may be warranted if the ALJ relies on improper or outdated listings. *Rodriguez v. Comm'r of Soc. Security*, 14-CV-02152 (ALC), 2014 WL 4792076, at *2 (S.D.N.Y. Sep. 25, 2014). If such legal error "may have affected the disposition of the case," the use of improper or outdated listings constitutes reversible error. *Salerno v. Berryhill*, 19-CV-00627 (KHP), 2020 WL 882006, at *6 (S.D.N.Y. Feb 24, 2020).

Here, ALJ Carlton's decision is dated May 4, 2021. (ECF 10 at 10). However, he relied on Listing 1.04, which was only applicable until April 1, 2021. SSA Program Operation Manual System (POMS), at DI 34121.013. The new musculoskeletal listings were effective beginning April 2, 2021. POMS, at DI 34221.015. Therefore, ALJ Carlton should have applied Listing 1.15 of 20 CFR § 404 Appendix 1 of Subpart P, Part A.

ALJ Carlton's improper reliance on Listing 1.04 to determine that Plaintiff did not meet the criteria for "compromise of the nerve root" may have affected the disposition of the case, as the new listings offer a much more comprehensive definition of "compromise of the nerve root." (ECF 10 at 17). The new definition considers compromise of the nerve root to exist when "a physical object, such as a tumor, herniated disc, foreign body, or arthritic spur, is pushing on the nerve root as seen during imaging or surgery.
20 CFR § 404 Appx.1 of Subpart P (A)1.00(F)(2). There are multiple medical records that contain evidence of a herniated disc pushing on the nerve root. (ECF 10 at 370, 382). This is enough to demonstrate that the legal error *may have* affected the disposition of the case. Thus, on remand, the ALJ must complete a new step three analysis relying on the proper listing.

 2. *ALJ Carlton's RFC Determination was Unsupported by the Record*

   a. ALJ Carlton Misconstrued a Medical Finding of Dr. Rosenbaum

An ALJ's opinion is not supported by substantial evidence if an ALJ "misreads a critical piece of evidence in the record and then relies on his error in reaching his opinion." *Joseph v. Astrue*, No. 06-CV-1356 (RMB) (DCF), 2007 WL 5035942, at *1 (S.D.N.Y. Dec. 28, 2007), *report and recommendation adopted*, No. 06-CV-1356 (RMB) (DCF), 2008 WL 850158 (S.D.N.Y. Mar. 20, 2008). Therefore, "in some cases where the ALJ bases his decision on a misinterpretation of the evidence, remand may be warranted to afford the ALJ with an opportunity to re-evaluate the plaintiff's claim in light of what the evidence actually reveals." *Id.*

However, an ALJ's mistake of fact does not warrant a remand of the opinion if the error is harmless. *Desoye v. Saul*, 19-CV-6599 (ALC), 2021 WL 1172675, at *23 (SDNY). An error is harmless if evidence in the record makes it clear that the ALJ would have come to the same

conclusion regardless of the error. *Young v. Kijakazi*, 21-CV-03604 (SDA), 2021 WL 4148733, at *31 (S.D.N.Y. Sep. 12, 2021).

As part of ALJ Carlton's explanation of his RFC finding, he wrote that "Dr. Rosenbaum opined that claimant . . . is further limited to prolonged standing greater than one hour." (ECF 10 at 20, citing ECF 10 at 334). ALJ Carlton found Dr. Rosenbaum's determination of standing limitations consistent with the testimony and physical evaluations in the record. (ECF 10 at 20). However, Dr. Rosenbaum's statement was that Plaintiff was limited in "prolonged *sitting* greater than one hour." (ECF 10 at 334) (emphasis added).

Plaintiff's inability to sit for long periods of time is central to her claim and affects her ability to maintain her prior job or obtain another. (ECF 10 at 38, 242, 359). ALJ Carlton did not include any sitting limitations in his RFC determination. (ECF 10 at 18-20). It is not clear that ALJ Carlton necessarily would have come to the same conclusion had he not made that error. Therefore, ALJ Carlton's misreading of sitting limitations as standing limitations is not harmless.

b.  ALJ Carlton Failed to Properly Consider the Medical Opinions in the Record

For claims such as this one, filed on or after March 17, 2017, ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. §§ 404.1520c and 416.920c. Instead, ALJs "will articulate in [their] determination or decision how persuasive [they] find all of the medical opinions." 20 C.F.R. § 416.920c(b). To determine persuasiveness, ALJs must consider: (1) the supportability of the opinion; (2) the consistency of the opinion with the rest of the record; (3) the relationship of the medical source to the claimant; (4) the specialization of the source; and (5) "other factors" such as familiarity

with the evidence or with SSA policies. 20 C.F.R. § 404.1520c(c)(1)–(5). The supportability and consistency factors are the "most important." 20 C.F.R. § 416.920c(a).

Accordingly, the regulations mandate that ALJs "will explain how [they] considered the supportability and consistency factors for a medical source's medical opinions." 20 C.F.R. § 416.920c(b)(2); *Vellone v. Saul*, No. 20-CV-261 (RA)(KHP), 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted*, 2021 WL 2801138 (S.D.N.Y. July 6, 2021) ("[I]n cases where the new regulations apply, an ALJ must explain his/her approach with respect to the first two factors when considering a medical opinion."). "Supportability" is "the objective medical evidence and supporting explanations presented by a medical source." 20 C.F.R. § 404.1520c(c)(1). "Consistency" refers to how the medical source's opinions compare with "evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2).

Although ALJs are only required to articulate their consideration of those two factors, ALJs must consider all five factors when determining a medical opinion's persuasiveness. 20 C.F.R. § 416.920c(c). In the case of medical opinions that are "equally well-supported . . . and consistent with the record . . . but are not exactly the same," ALJs must articulate how they considered factors three through five when determining the persuasiveness of the opinions. 20 C.F.R. § 404.1520c(b)(3).

Failure of an ALJ to "adequately consider and apply the new regulatory factors… require[s] a reviewing court to remand." *Acosta Cuevas v. Comm'r of Soc. Sec.*, 20-CV-0502 (AJN) (KHP) 2021 WL 363682, at *27 (S.D.N.Y. Jan. 29, 2021). For example, failure to address supportability or consistency is itself legal error. *Cuevas,* 2021 WL 363682 at *48 ("Because the

13

ALJ failed to address the supportability factor… the ALJ committed legal error by failing to apply the proper legal standards.").

Additionally, it is well-settled that ALJ may not "arbitrarily substitute his own judgment for a competent medical opinion." *McBrayer v. Secretary of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir.1983); *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015). While an ALJ is free to "choose between properly submitted medical opinions, he his not free to set his own expertise against that of a physician that testified before him." *McBrayer*, 712 F.2d at 799 (quoting *Gober v. Matthews*, 574 F.2d 772, 777 (3d Cir. 1978). Similarly, an ALJ "cannot simply 'secure raw data from the treating physician' to make his or her own disability determination.'" *Kit v. Comm'r of Soc. Sec.*, 21-CV-00546 (FB) 2023 WL 1475239, at *3 (E.D.N.Y. Feb 2, 2023) (finding that an ALJ who discredited the opinions of the majority of medical experts who found that claimant was disabled and proceeded to conclude that claimant was not disabled, improperly substituted his own opinion for that of the physicians) (quoting *Peed v. Sullivan*, 778 F.Supp. 1241, 1246 (E.D.N.Y. Nov 22, 1991). Where an ALJ discounts "every medical opinion available," yet comes to a conclusion of their own, that disability determination cannot be said to be supported by substantial evidence. *Peterson v. Kijakazi*, 22-CV-00026 (VLB) 2023 WL 334379, at *18 (D. Conn. Jan 20, 2023). An ALJ's determination need not "perfectly correspond" with the opinions of the medical sources, yet it cannot "completely depart" from the "only functional assessments speaking to those limitations in the record." *Id*. at *23. If there are no medical opinions in the record that the ALJ deems supportable and consistent, they have the obligation to further develop the record and clarify existing medical opinions or obtain new ones. *Id*. at *26.

Here, ALJ Carlton found that all but one of the medical opinions in the record were "unpersuasive" and that the remaining opinion was only "somewhat persuasive." (ECF 10 at 20-21). Accordingly, ALJ Carlton necessarily substituted his own opinion for that of physicians in the record, "leaving him to fashion a specific RFC limitation from 'whole cloth.'" *Id*. at *23 (quoting *Gary v. Comm'r of Soc. Sec.*, 20-CV-6735, 2022 WL 16540354, at *5 (W.D.N.Y. Oct. 28, 2022). Even if ALJ Carlton were correct in determining that each opinion was unpersuasive, he had the duty to further develop the record, and he did not. *Peterson*, 2023 WL 334379, at *23.

On remand, ALJ Carlton may either reweigh the persuasiveness of the opinions in the record and rely on persuasive medical testimony, or may further develop the record to obtain persuasive medical opinions on which to rely.

*3. ALJ Carlton's step five determination was not supported by substantial evidence*

At step five, the Commissioner has the burden of proving that, based on the plaintiff's RFC, age, education, and past work experience, the plaintiff is capable of performing some other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4). As with the ALJ's other findings, the reviewing court will look to whether the ALJ's determination is supported by substantial evidence. 42 U.S.C.A. § 405(g). To be considered supported by substantial evidence, the ALJ may, and often does, rely on a VE's testimony as to the availability of jobs suited to a hypothetical person with the claimant's capabilities. *Roman v. Berryhill*, 17-CV-02804 (VSB) (DCF), 2018 WL 7291422, at *4 (S.D.N.Y. May 9, 2018). However, the facts of the hypothetical must "accurately reflect the limitations and capabilities of the claimant involved." *Id*. If the ALJ bases their findings a hypothetical that does not accurately reflect the plaintiff's limitations, their determination must be remanded. *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981).

15

Here, ALJ Carlton relied primarily on the VE's testimony in his step five determination. (ECF 10 at 22-23) ("based on the testimony of the vocational expert, the undersigned concludes that...."). However, his instructions to VE Distefano failed to accurately reflect the limitations of Plaintiff. ALJ Carlton failed to note *any* standing or sitting limitations in his hypothetical, even though these two issues were central to Plaintiff's claim and were substantiated throughout the record. (ECF 10 at 38, 282, 334). ALJ Carlton himself even noted that Plaintiff's standing limitations were "consistent" with Plaintiff's testimony and other medical evidence. (ECF 10 at 20). Moreover, as noted in Issue 2(a), ALJ Carlton misconstrued Dr. Rosenbaum's determination that Plaintiff had sitting limitations as a determination that plaintiff had standing limitations. (ECF 10 at 20, 334). Therefore, correcting ALJ Carlton's understanding of Dr. Rosenbaum's opinion would also impact the hypothetical that he provided to the VE.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings is **GRANTED**, the Commissioner's Cross Motion for Judgment on the Pleadings is **DENIED**, and the case is remanded for further proceedings pursuant to 42 U.S.C. § 405(g).

**SO ORDERED.**

Dated: March 15, 2024
New York, New York

*s/ Ona T. Wang*
**Ona T. Wang**
United States Magistrate Judge